Thank you, your honors. Good morning. I am going to endeavor to reserve two minutes at the end for rebuttal and I will watch my own clock. Your honors, my name is Trevor Lee appearing on behalf of petitioner Janamjet Sodhi. Before we begin a brief matter of housekeeping, we've represented in our briefs that Sodhi was detained. Last Friday, ICE released Sodhi from detention, so I just wanted to update you that he is no longer detained. We've raised several issues in our brief, but given our limited time, unless there are specific areas or questions that you would like me to address, I'm going to focus on two issues, and that is the agency's treatment of Sodhi's expert witness and the agency's determination on the likelihood of torture. Now, on the first issue, in proceedings before the IJ, Sodhi put on an expert, Karen Parker, who testified, among other things, that Sodhi would likely be tortured if sent to India. The IJ found her testimony credible, but gave it reduced weight, and we've raised two arguments on this point, one procedural and one substantive. On the procedural point, Sodhi appealed this issue to the BIA, and not only did the BIA not address this argument, it didn't address Sodhi's expert at all. This court has held... Before you get to the expert, counsel, let me ask you a question. Did the IJ or the BIA ever address Sodhi's parents' declaration? I don't think that the IJ or BIA explicitly addressed them. It didn't seem to me that they addressed them at all. That's probably right, Your Honor. I think that... I know that the BIA didn't, and the IJ's decision was a little bit longer, but I don't recall her citing them at all either. Well, if they don't address those decisions, it seems to me that's a better argument than arguing about the expert. Well, I think that's a great argument as well, Your Honor. I mean, I think that they're both issues here, and that gets to the likelihood of torture, and I can skip ahead and talk about that now. I mean, that's the second issue I wanted to address, and, you know, Sodhi raised two issues there on the likelihood of torture, both that he was likely to be tortured based on his own advocacy for Khalistan, and that he was likely to be tortured based on his association with his father. Now, I think... Let me ask you another question about that. Yes. Did the IJ or the BIA ever say they were discounting Sodhi's testimony or any of his declarations because of hearsay? To the contrary, Your Honor. They didn't, as you mentioned, I don't believe they addressed the parents' declarations, and on Sodhi's the IJ found it credible, meaning that this court takes that as true now. That's the Wackrey case cited in our briefing. So what does it mean when you say that they gave, that the IJ gave Sodhi full evidentiary weight? What the IJ said when addressing Sodhi's testimony was that it was credible, and she gave it full evidentiary weight. Can you discount a testimony by other evidence in the record by giving Sodhi full evidentiary weight? I'm not sure I understand the question, Your Honor. Well, can the IJ still discount Sodhi's testimony if they give Sodhi full evidentiary weight? I mean, I think that would be inconsistent to say that she's giving it full evidentiary weight and then discount it. And I mean, I think that our primary point here, at least with regard to his own, Sodhi's own advocacy for Khalistan, is that she did discount it, even though she found it credible. Now, the IJ... What's in the record about his activism? It appears that he attended temples, but did he actively participate in public tests or other forums? Yes, Your Honor. So Sodhi testified that he attends temples. He testified that he attends rallies. He testified that he supports the Khalistan referendum 2020, which is a non-governmental referendum to establish an independent Sikh state. And ultimately, he testified that he is a part of the Khalistan movement and that he intends to remain a part of it and advocate for it if sent to India. That's AR-266. And again, that testimony was found credible, so it must be taken as true. Now, in concluding that he was not likely to suffer torture, the IJ concluded essentially the opposite. She concluded that... I think she conceded that Sikhs who advocate for Khalistan in India are likely to be tortured. She just concluded that Sodhi was not a Sikh who advocated for Khalistan. And given that testimony that she found credible and that now must be taken as true, I think she simply got it wrong. As I mentioned, he testified that he is an advocate, and there's no evidence to the contrary. Don't the country conditions suggest that's not enough? People who are targeted aren't the ones who necessarily advocate, but the ones who are, quote-unquote, more militant or more active? I think what the country conditions suggest and what the IJ and BIA concluded is that politically active Sikhs are likely to be targeted. And I don't think it's disputed that, or it can be disputed that Sodhi is politically active. I think that advocating for Khalistan is political activism. But regardless of what the record shows generally with regard to Sikhs, your honors, it's undisputed that as to Sodhi specifically, his parents have suffered extensive torture on our second argument, or Jimmy's second argument for his likelihood of torture, which is that quite apart from his own advocacy, he's likely to be tortured simply based on his familial association. Now, the BIA's only response to this point is that Sodhi's not- Let me stop you a little bit. Let me ask you a question, which I think this ends where you're going. Can't the IJ find someone credible and yet conclude that the country conditions do not support his or her claim? I suppose they could. But in this case, the IJ gave him full evidentiary weight. And I think that implies that she's crediting everything he says. Now, like I said, the country conditions, I'll concede there is some mixed evidence there. There's evidence for on our side, there's evidence against us. But what I don't think it's disputed at all as to Sodhi's particular circumstances, that his parents have been repeatedly tortured. As you mentioned, Judge Smith, his father provided a declaration. His mother provided a declaration. There are police reports stating not only, well, I guess the police reports are stating that Sodhi and his brother need to be brought in to police. And Sodhi himself credibly testified at AR 255 that he fears torture based on his father's advocacy. Now, this court has held that this alone can be sufficient to grant deferral of removal. And that's the Figueroa Hincapie case. Can I ask you a question about the experts? So what's the significance of the fact that the same expert who gave roughly the same testimony was credited in this other case that you cite, which I think is called Singh? Yes. Well, I think it means that, for one, the BIA didn't address this issue in our case. So I think that that itself can be grounds to remand. But I think that we already know how the BIA would So it involved the same IJ, same expert. She discounted the expert on the exact same basis that she didn't provide support for all of her conclusions and that some of the testimony contradicted some of the record evidence. And in fact, she actually provided the exact same three examples of apparent contradictions. That's Appendix 21. You can compare that with AR 92. So I think in this case, Ms. Parker provided nearly identical sources. So what it means, is that if the BIA had addressed this argument, it would have reversed the IJ, assuming it rules consistently. And this court does assume that the BIA rules consistently. That's the Alphonsus case cited in our brief. Thank you. I'm hoping to reserve the remainder of my time. But before I do, I'd like to just point your honors to a case that came down a couple of days after our opening brief was filed. It's 962 F 3rd 1175 Xochitl Jimenez. And it discusses the relocation burden in the deferral context. And it supports the argument that the burden is on the IJ and BIA and that they must come up with affirmative evidence that relocation is possible. Thank you. Ms. Melnick. May it please the court, Karen Melnick for the United States. Petitioner does not point to any evidence that compels reversal of the board's decision. His claim really rests on a series of suppositions and at bottom that I am my father's son. Therefore, I will be tortured when I return to India. But he, as the IJ found, is not in the same position as his father was. First of all, petitioner has not been there for 30 years, obviously never advocated for the calistan movement while he was there as he left as a child. Although petitioner says that he goes to a temple and there are meetings there where the calistan movement is discussed, there's nothing objective. There's no outward evidence such that the Indian government would be aware of his feeling or intention or advocacy upon his return. I like it too. But just a minute, just a minute, counsel. Sure. The IJ concluded that Sodhi was credible, right? Yes. And so therefore credible, he testifies that he fears torture and detention based on his faith and belief in calistan. He plans on being active in support of calistan and when he moved, if he's removed to India, he supports the movement and provides examples of that he went to gatherings or rallies on some occasions. I guess I'm trying to figure out how the IJ can come to this conclusion and it be supported by substantial evidence when it's contrary to Sodhi's credible testimony. Well, his credible testimony has to be considered with all the evidence. I mean, just because... Well, I understand that. Right. So just because... What evidence is there that the IJ can rely on to discount this credible testimony? Well, the government would suggest that what he, what petitioner puts forth is still a series of suppositions in a practical sense. Just a minute. Suppositions is, what is there which would allow you to discount this? First of all, did you even look at the parent's declarations? It's not in the record. I'm sorry. The IJ even looked at those, even looked at what the parents did? The IJ was aware and noted that the parents, that the father especially, was the subject of torture by the Indian government and distinguished the father, the parents, because the father is someone who is active in the country. He was a college professor. He had students over at his home, influencing perhaps a younger generation, something that the Indian government would be particularly interested in. Petitioner, by contrast, hasn't been in the country in 30 years. So to say, as I was about to say, I liken it to a, say, a Chinese national who says, well, I intend to go back to my country and have five children with my wife when I get back, and the government will find out about that, and they'll torture me because of it. I, the petitioners... Well, it, it's, it sounds like a great argument, except it seems to me the IJ and the BIA, specifically the IJ, has to look at all the evidence in the record. And one of the, one of most of the evidence in the record that were, that you're really taking, if you will, taking, saying is of no efficacy, are the parents' declarations. The parents' declarations suggest that all this is not just something that's happened many, many years ago, but that it would happen today if he came back. And yet, the IJ didn't even address those declarations. Which state? The police know he's in removal proceeding. They know he, they intend to arrest him when he comes back. That's, I mean, that's their argument. Yes, Your Honor. I think that there's a presumption that the immigration judge and board have considered all of the evidence. That's their obligation. Well, but it seems to me you, just a minute, it seems to me you got to address them. You can't just let them sit there without anything. Well, no. Not individually, not every specific piece of evidence. The IJ doesn't have to go every article, every news piece, every photograph. That's not so, Your Honor. They don't have to write about and mention every single piece of evidence. So long as they address, you know, the claim itself in a fulsome manner. And I would suggest that this IJ's written decision, which is broken down at each individual pieces, going through country conditions, going through the testimony, going through the expert, is a fairly fulsome exegesis of the claim and why she decided that the record does not does not meet the standard for cat protection. And if I could just... I have a tough time with that. The IJ concludes, the evidence does not suggest the Indian police would learn of a respondent's return to India as a failed asylum seeker and target him on his arrival. That absolutely ignores what the parents said and what he said. And he is credible. Right. But it also doesn't... Your Honor's not taking into account other evidence in the record, objective evidence that petitioner submitted that says, no, when someone comes back as a, say, a criminal record in the country, which obviously he doesn't because he hasn't been there in 30 years, that no, they're not targeted in any way. And I would draw a distinction, Your Honor, between, you know, the local police and, you know, the national government of India when he enters the country. Their expert could not produce anything concrete, no corroboration for her testimony that there's a watch list. And indeed, her evidence conflicts with other petitioner evidence that nothing, they're not targeted. And if I could just... So what was the rejection of the SOTI's expert testimony based on the Punjabi police or the Indian government? I raise it because that's your argument right now. What was it based on? I'm sorry, the IJ did not reject First, let me say this. I would ask Your Honors to look at the board's, I mean, the petitioner's board brief. I would suggest that he did not raise this issue to the board specifically about this other IJ decision. In fact, it came out after this case was closed. So therefore, it was not raised to the board. And I would suggest that he failed to exhaust it with respect to the board's, this other Singh matter, which, by the way, we don't know what was in that record. And I would also suggest that the IJ in this case, one of the reasons that she did not give full weight to her evidence or balanced it accordingly with all the evidence, which is for obligation, is because it was inconsistent with some evidence that petitioner put forth, not just the credentials aspect, which really goes to whether or not she should have been qualified as an expert in the first place. Didn't the IJ say the same thing? Didn't the IJ say the same thing in the other case that the record evidence was inconsistent with the experts? No, no, I reread the, I, well, I was looking at the board's decision, summarizing why, and the board said that did not mention the inconsistency with the evidence. But, you know, even if it did, your honor, I would suggest that this is not even a purview for a court of appeals. I mean, you have a jury, say for instance, it was a jury, which a fact finder, just as you have the immigration judge as a fact finder. You know, once you have, you know, as an expert, it's no different from any other witness, except if permitted to, they can opine on the ultimate issue in the case, but their testimony is weighed. You know, jury verdicts are pretty opaque. They don't go witness by witness and say whether we believe this and we don't. These decisions aren't opaque. They're not supposed to be, right? Well, set out in the record. I mean, it'd be pretty obvious, say, for example, if you have a medical examiner that says ruling of death is a homicide, but then you have eyewitness testimony that say it's an accident and then the jury finds them not guilty. So that would suggest that they discounted or did not credit the expert witness, the medical examiner. I mean, that's just an example, but I'm saying I don't think that getting, this is necessarily a purview for a court of appeals to look at how a judge, a fact finder in this case, weighs evidence, so long as they considered the evidence, which clearly she did, and went through in detail what she found, you know, the weaknesses were, the lack of, you know, watch list. What about, you'll see from the cross-examiner from the DHS counsel, what about a watch? What's your, do you have one? How do you know he's even on one? I mean, and the fact about a return to Sia Lee's, her statements were very conclusory. Oh, well, they'll know. They'll know he's back. They'll know, and they'll do this, that, and the other. Pure speculation. Honestly, petitioner's entire argument is purely speculative with respect to hoops to jump through before we get to the Indian government is going to torture this man. All right, thank you. Thank you. Thank you, your honors. A couple quick points. Ms. Melnick stated that there's no evidence that the government is aware he's coming back. To the contrary, both declarations from his parents state that they're aware that he's in deportation proceedings. The police reports state that he needs to report as soon as he gets back, and so he testified that he fears torture coming back. Ms. Melnick said that the experts did not address the distinction between national and local officials. Well, this is the exact same, this is the exact same reason she identified in In-Re-Sing, and this is at appendix 22, and the BIA reversed that decision. I think Ms. Melnick referred to a failure to exhaust this argument related to this, the separate In-Re-Sing decision. We're citing this as authority. We're not citing this as an argument that, you know, should have been exhausted to the BIA. We're citing it as authority for why the IJ erred and why the BIA, had it addressed this claim, would have ruled differently. I mean, SOTI is obligated to address, to exhaust the issue of Parker's testimony, and I think he did that. And finally, I think Ms. Melnick said or suggested that there was a presumption that the IJ had considered all of the evidence, and that the decision here was very lengthy. It's true that it was lengthy, but as Judge Smith noted, she didn't address the parents' declarations, and she found SOTI's testimony, may I briefly conclude, I see I'm out of time. You can finish your point. She found SOTI's testimony credible, and then simply concluded to the contrary, which I think is against the substantial weight of evidence. So if there are no further questions from the panel, we would ask that the petition be granted. Thank you. This case has been submitted, and the argument was very helpful, and I especially want to thank Mr. Lee. I know you've taken this case for a bono basis, so we appreciate that. It's a credit to the profession. Thank you. Next case on the docket is United States v. Glass.
judges: N.R. Smith, Kennelly, Lee